JOHN MONROE *v.* WILLIAM F. BROENING,
RECEIVER
[No. 53, April Term, 1934.]

240

*Decided June 13, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Richard E. Preece,* with whom was *Malcolm J. Coan* on the brief, for the appellant.

*J. Le Roy Hopkins,* with whom was *Lawrence S. Kaufman* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This appeal is from an order of court sustaining the receiver's exceptions to the allowance of a claim for $4,000 on a note for that amount from the First Lithuanian Building Association of Baltimore City to John Monroe, the appellant.

On January 19th, 1932, he deposited $4,000 in the association, and it was credited on his free share passbook. On August 31st, 1932, the association applied to him for a temporary loan of $3,000 and assured him he would be paid out of money to be borrowed from the Reconstruction Finance Corporation. He promised to lend the money, but on meeting the officers that evening refused to make the loan unless the $4,000 deposited on January 19th, 1932, on his free share account should be trans-

ferred to a note account, so that he would become a creditor instead of a free shareholder. This put the officers in an embarrassing position, as they had paid out over $2,000 relying on appellant's promise of a loan of $3,000. On the advice of the president, who was a brother of appellant, the association yielded to appellant's demand, and in consideration of his new loan of $3,000 gave him a note for that amount, and also a note for $4,000, with a memorandum on the latter, "Transferred from f. s. acct. No. 310," and at the same time making an entry on his free share account No. 310, "Transferred to Note 782—$4,000." About a week later a bill was filed by certain free shareholders alleging insolvency of the association and asking for the appointment of a receiver to liquidate the association and distribute the assets among the creditors, depositors, and all other persons entitled, in the order of their priority, under the direction of the court, and also asking for an injunction to restrain the association and its officers and directors from paying out any of its assets pending the further order of the court. On September 23rd, 1932, answer was filed denying insolvency and other material allegations of the bill, and it does not appear from the record that anything further was done until December 15th, 1932, when another petition for injunction was filed by the plaintiffs, in which it is alleged that, contrary to the verbal agreement made with the court that no more money would be paid out to free shareholders without the consent of counsel for plaintiffs, defendant has continued to pay out money to such of its depositors or free shareholders as may be favored by the management; that defendant owes more than $25,000 in taxes on properties which it has repossessed, and has failed to use for the payment of taxes considerable sums of money paid in by mortgage borrowers for that purpose, and that a considerable sum is due for taxes on property on which defendant holds mortgages, and that defendant cannot pay any of these taxes, because, according to the statement of its counsel, it has little, if any, money on hand; that several of the prop-

erties upon which defendant holds mortgages have been advertised for sale by the city collector for nonpayment of taxes; that defendant is insolvent. The prayer of the petition was for the appointment of a receiver and for an injunction as in the original bill. On this petition an injunction was granted. On April 24th, 1933, an answer was filed again denying insolvency and alleging that the appointment of a receiver would be disastrous to the interests of its free shareholders, and with the answer were filed resolutions adopted at the annual meeting of shareholders on January 9th, 1933, expressing confidence in the board of directors and officers of the association, and disapproving of any attempt to throw the affairs of its association into receivership, but authorizing the directors in their discretion to take the necessary steps to liquidate the affairs of the association out of court, if they deem such liquidation necessary or advisable, and directing that no shareholder shall be permitted to withdraw his free shares in the association except at such times and in such amounts as the directors shall determine, but authorizing them to make payments in small amounts from time to time to such free shareholders as they shall find to be actually in need. After that the proceedings seem again to have remained dormant until June 20th, 1933, when the chancellor appointed a receiver. On November 24th, 1933, appellant filed as a creditor the said note of August 31st, 1932, and a renewal of the note of the same date for $3,000.

The receiver excepted to the allowance of the $4,000 note on the ground that the note was given for money which had been invested by appellant in his free share account, and the only reason the note was given was because appellant and his brother, the president of the association, knew that the association was threatened with a receivership, and it was given to appellant by his brother so that appellant could stand in a preferred position with reference to the other free shareholders. Testimony was taken in open court, and the chancellor found on this testimony the facts to be as follows:

That the $4,000 deposit on January 19th, 1932, was not made as a loan, but was deposited by appellant on his free share account; that the loan of $3,000 by appellant was on condition that the association would issue to him a note transferring said $4,000 from his free share account to the form of a promissory note, which would change his status from that of a free shareholder to that of a general creditor. In our opinion, that finding is abundantly supported by the evidence. The chancellor's conclusion from these facts was that, except for section 170 of article 23 of the Code, he would hold that appellant was a general creditor as to this note of $4,000; but that the giving of this note was within the inhibition of that statute, as it was the issuing of a promise to pay a free shareholder at a future date as against the actual payment of money. We concur in that conclusion. The section of the Code referred to provides (as corrected by reference to the Acts of 1878, ch. 154) : "It shall not be lawful for any * * * building association * * * to issue any promissory note, bill or obligation of any kind to any member thereof, or borrower therefrom in lieu of money, and all loans by such corporation shall be made in money and not otherwise, and all notes, bills or obligations of any sort issued by any such association to or for the use or benefit of any member or borrower in lieu of money * * * shall be void and of no force and validity whatever, either in law or equity."

On the facts as shown by this record, if the association had paid this free shareholder his $4,000 deposit in cash in regular course of business, it would have been a valid payment. But, when it gave him its note, it was in effect substituting its note for a cash payment.

In *Pocomoke City National Bank v. Crockett*, 145 Md. 435, 125 A. 712, cited and relied on by appellant, there was an actual borrowing by the building association from the bank, and a loan by the association to Ellis, or his firm, although there was much irregularity in making the entries. The association issued its note to the bank for a loan from the bank to the association. In-

stead of paying the money to the association and having it issue its check to Ennis for its loan to him and having Ennis use this money to pay his obligation to the bank, Ennis, who was cashier of the bank and also a director of the association, used the note of the association to the bank to replace in the bank an obligation of Ennis or his firm to the bank. But the association had the note of Ennis for the loan to him, and both the loan by the bank to the association and that by the association to Ennis were duly authorized. This court held that, in the absence of fraud, which was neither alleged nor proved, the association was liable on its note to the bank; that the transaction was the same in effect as if the proceeds of the note of the association had been credited to it on the books of the bank, and a check therefor had been given by the association on the bank to Ennis or his firm.

In the present case there was no agreement by the appellant to lend the association $4,000, but the whole purpose of the transaction was to change appellant's status as to a past transaction. The evidence is that the board of directors refused to approve this change of status. So that the transaction must be taken to have been the issuing of a note to pay at a future date a free shareholder's deposit.

*Order affirmed, with costs.*